**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| DAMION WASHINGTON, )<br>       Plaintiff, )<br>        )<br>    v. )<br>        )<br>MICHAEL J. ASTRUE, )<br>Commissioner of the Social Security )<br>Administration, )<br>       Defendant. ) | CAUSE NO.: 2:10-CV-367-PRC |

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Alter or Amend Judgment Pursuant to F.R.C.P. 59(e) [DE 35], filed by Plaintiff Damion Washington on February 9, 2012. Defendant has not filed a reply, and the time to do so has passed.

## PROCEDURAL BACKGROUND

On August 7, 2006, Damion Washington filed an application for a period of disability and disability insurance benefits as a disabled adult child, alleging disability beginning [ ], 1989. In order to be approved for benefits as a disabled adult child, Mr. Washington needed to show that his disability began before age 22. Mr. Washington's application was denied initially on December 21, 2006, and upon reconsideration on April 9, 2007.

At Mr. Washington's request, a hearing was held on June 25, 2009, before Administrative Law Judge ("ALJ") Paul R. Armstrong, at which Mr. Washington, his attorney, and a vocational expert ("VE") appeared. On September 4, 2009, the ALJ issued a decision denying Mr. Washington's application. The ALJ made the following findings:

1. As a disabled adult child, the claimant qualifies for benefits as of [], 2007, and must establish that his disability began on or before his 22nd birthday, or [ ], 2010.

2. The claimant has not engaged in substantial gainful activity since [], 2007, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairment: borderline intellectual functioning (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) but is limited to simple and repetitive work.

6. The claimant has no past relevant work (20 CFR 404.1565).

7. The claimant was born on [], 1989 and was 18 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from [ ], 2007 through the date of this decision (20 CFR 404.1520(g)).

(R. 24-32).

Mr. Washington sought review of the ALJ's decision, but the Appeals Council denied this request, leaving the ALJ's decision the final decision of the Commissioner.

On September 20, 2010, Mr. Washington filed a Complaint. On March 17, 2011, Mr. Washington filed a Plaintiff's Memorandum in Support of his Motion to Reverse the Decision of

the Commissioner of Social Security, requesting that the September 4, 2009 decision of the Administrative Law Judge denying him disability insurance benefits be reversed or, alternatively, remanded for further proceedings. On June 27, 2011, Defendant filed a response, and on July 11, 2011, Mr. Washington filed a reply. On January 12, 2012, the Court issued an Opinion and Order denying Mr. Washington's request for reversal or remand. On February 9, 2012, Mr. Washington filed the instant Plaintiff's Motion to Alter or Amend Judgment Pursuant to F.R.C.P. 59(e). Defendant did not file a response.

## FACTS

The following facts are taken from the Court's January 12, 2012 Opinion and Order.

### A. Medical History

Mr. Washington had a learning disability as a child and received special education in school. On March 24, 1999, when he was 10 years old and in third grade, his WISC-III full-scale IQ was 72. Mr. Washington was retested in January 2002, when he was 13 years old; his full-scale IQ score was 70, and he was reading at the second-grade level. In September 2006, when Mr. Washington was 17 years old, he underwent psychological testing at the request of the Social Security Administration and obtained a full-scale IQ score of 56. Dr. Parks, the psychologist who performed the examination, indicated that Mr. Washington was cooperative during the examination, but "appeared to lack consistent motivation on the exam." AR 276. Dr. Parks recognized that Mr. Washington had obtained a full-scale score of 70 on an earlier test, and stated it was "unclear as to Damion's actual level of cognitive functioning given the lack of validity of the current WAISIII scores." *Id*.

The Social Security Administration requested another psychological exam, which was performed at Mid-America Psychological and Counseling Services on November 7, 2006. The examiner recognized Mr. Washington's earlier scores of 56 and 70. On this administration, Mr. Washington's full-scale IQ score was 69. The examiner opined that the variation in scores was attributable to Mr. Washington's "variable motivation." AR 272.

On November 15, 2006, Dr. Kenneth Neville, a non-examining State agency psychologist, completed a psychiatric review technique form. He opined that Mr. Washington had borderline intellectual functioning, which caused mild limitations in activities of daily living and maintaining social functioning and moderate limitations in maintaining concentration, persistence, or pace. Dr. Neville indicated no episodes of decompensation. Dr. Neville also completed a mental residual functional capacity assessment and opined that Mr. Washington was markedly limited in the ability to understand, remember, and carry out detailed instructions and was moderately limited in the ability to sustain an ordinary routine without special supervision, the ability to make simple work-related decisions, the ability to respond appropriately to changes in the work setting, and the ability to set realistic goals or make plans independently of others.

On February 22, 2007, Dr. Robert Coyle, a psychologist, administered an Adaptive Behavior: Street Survival Skills Questionnaire. Mr. Washington was not able to show understanding of the following concepts: right, between, most, half, same, and front. Mr. Washington could not identify an exit sign, a deposit money sign, a no trespassing sign, and a flammable sign; he was very poor at identifying the names of basic hand tools and had practically no knowledge of their functions; he did not understand any concepts that involved laundry sorting, cleaning, or drying; he was very limited in his understanding of basic concepts involved in health and safety as it relates to working;

he could use a phone for emergency calls, but could not read a phone directory; he could tell time to the hour on a dial clock, but not to the nearest half hour or five minutes; he had trouble with timed activities and could not read a calendar; he could identify coins and dollar bills, but could not make equivalent amounts of money, make change for a dollar, or make change for several dollars; he could easily be cheated in a monetary transaction; and he could not measure liquid in cups or fractions of cups, could not read a thermometer, and could not use a ruler for measuring inches or fractions of an inch.

>Dr. Coyle stated:
>
>The previous intelligence tests that suggested Mild Mental Retardation appear to be correct . . . . These data suggest that because of his limited intelligence and limited adaptive behavior, he is going to need a great deal of guidance and support from vocational rehabilitation if he is going to succeed in working after high school graduation. He will need a job coach, close supervision and supported employment.

AR 223.

Following a consultative examination on December 13, 2006, Dr. Teofilo Bautista diagnosed Mr. Washington with having a learning disability, obesity, and hypertension. At the examination, Mr. Washington weighed 333 pounds. Mr. Washington reported to Dr. Bautista that he is able to walk one block with shortness of breath, stand for 35 minutes with fatigue, and climb ten steps with shortness of breath. Upon examination, Dr. Bautista found no deformity of the back, good range of motion of both the upper and lower extremities, no joint pain or swelling, good grip strength in both hands, and good muscle tone, strength, and reflexes in both the upper and lower extremities. He found that Mr. Washington could walk and run well without difficulty. An examination in June 2008 showed that Plaintiff was 5'6" tall and weighed 339 pounds. This equates to a body mass index ("BMI") of 54.7.

## B. Testimony of Plaintiff and Plaintiff's Mother

Mr. Washington testified that he had worked at Hardee's fast food restaurant doing maintenance, changing the garbage, and cleaning the bathroom. He worked at Hardee's two days a week for seven hours per day. He got the job through vocational rehabilitation, and his brother or his aunt would take him to work. He lost the job because his brother's car was broken down and he missed two days of work. The people at Hardee's told Plaintiff's vocational counselor that while he did the work, it was difficult for him to keep up with their pace. He had the job at Hardee's for close to three months.

Mr. Washington testified that, after Hardee's, he got a job at McDonald's. His brother took him to the job at McDonald's also. Mr. Washington worked two days a week and was supposed to be there from 11 to 5, but most days they sent him home. Sometimes they sent him home when business was slow, and sometimes they would send him home or have him switch to a less demanding job like sweeping when it was busy. They also sent him home when it was busy. Mr. Washington testified that he got his job at McDonald's through a vocational rehabilitation program.

Mr. Washington testified that he weighed 270 pounds and had high blood pressure and diabetes. He testified that he would like to work but that it seemed like everything was not working out for him. He got a high school diploma with a waiver. He could read some parts of the newspaper, such as sports scores, but he got confused over some of the words.

Mr. Washington's mother testified that she had to wash his clothes for him because he could not sort the colors, she made his bed, and she cooked for him. She testified that he was still slow in getting around despite losing weight.

### C. Vocational Expert Testimony

The ALJ asked the vocational expert ("VE") to consider a hypothetical individual who had a special education high school diploma and was limited to performing simple, unskilled work with a specific vocational preparation of (SVP) of 1 or 2. The VE testified that such an individual could perform work as a dishwasher and that 3,399 such positions existed in the State of Indiana in the light work category as well as 6,798 medium positions. In addition, the hypothetical individual could perform "very concrete," production-like, repetitive jobs as a hand bander, ampule sealer, and packer/packager/hand packer/hand packager, with 858 positions existing in Indiana.

### D. The ALJ's Decision

The ALJ found that Mr. Washington had not engaged in substantial gainful activity since [], 2007, the alleged onset date, and that he had the severe impairment of borderline intellectual functioning. The ALJ found that Mr. Washington had further medically determinable impairments of obesity and hypertension, but that they were not severe impairments because they did not significantly limit the ability to do basic work activities. He further found that Mr. Washington's impairments did not meet or equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, discussing Listing 12.05 for mental retardation. Specifically, Mr. Washington did not meet Listing 12.05C because, while he had a valid full-scale IQ score of 69, he did not have another significant work-related limitation of function required to meet the Listing. The ALJ found that Mr. Washington did not meet Listing 12.05D because he did not have marked limitations in activities of daily living, social functioning, or concentration, persistence, or pace.

The ALJ found that Mr. Washington had the residual functional capacity to perform light work but was limited to simple, repetitive work. The ALJ also found that Mr. Washington's

statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the residual functional capacity assessment. Finally, the ALJ found that Mr. Washington was capable of performing the jobs of dishwasher and hand packager and, thus, was not disabled under the Social Security Act.

## STANDARD OF REVIEW

The Court applied the following standard of review in its January 12, 2012 Opinion and Order. The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

8

If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also

9

prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to Step 2; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to Step 3; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to Step 4; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5; (5) Can the claimant perform other work given the claimant's residual functional capacity, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's residual functional capacity ("RFC"). "The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young*, 362 F.3d at 1000. The ALJ must assess the RFC based on all the relevant evidence of record. *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is

on the ALJ. *Id.* at 1000; *see also Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

In the instant motion, Mr. Washington asks the Court to alter or amend its January 12, 2012 judgment as to the Court's decision regarding Listing 12.05C, the state agency reviewing physician, and Mr. Washington's deficits in concentration, persistence, or pace.

Federal Rule of Civil Procedure 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Rule 59(e) permits a court to alter a judgment "only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence." *Egonmwan v. Cook County Sheriff's Dept.*, 602 F.3d 845, (7th Cir. 2010) (quoting *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008)). The Court considers each of Mr. Washington's arguments in light of this standard.

### A. Listing 12.05C

In his original brief, Mr. Washington argued that the record supports a finding of disability under Listing 12.05C. He reasoned that the ALJ did not properly evaluate his impairments under Listing 12.05C and should have found that his borderline intellectual functioning, in combination with his obesity and hypertension, meet the requirements of the Listing. In this motion for reconsideration, Mr. Washington argues that the Court erred in its interpretation of the law by not requiring the ALJ to explain the inconsistency between, on the one hand, finding that Mr. Washington's obesity was not severe at Step Two and was not an "additional and significant work-related limitation of function" under Listing 12.05C at Step Three, and on the other hand, imposing

11

significant physical limitations in Mr. Washington's RFC for light work without any explanation of why the ALJ found Mr. Washington limited to light work.

>   Listing 12.05C provides:
>
>   Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
>   The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>   . . . .
>
>   C.  A valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
>   . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C (emphasis added); *see also Mendez v. Barnhart*, 439 F.3d 360, 361 (7th Cir. 2006) (explaining the impact of this range of IQ scores on an individual's ability to do work and the reasoning for requiring the combination of the low IQ score and an additional and significant physical or mental limitation).

In the January 12, 2012 Opinion and Order, the Court held that, because the ALJ properly found that Mr. Washington's obesity was not severe at Step Two, Mr. Washington did not have the requisite "additional and significant work-related limitation of function" required by Listing 12.05C at Step Three of the analysis based on Social Security Ruling 02-1p. Ruling 02-1p provides that, at Step Three of the sequential analysis, "when evaluating impairments under mental disorder listings 12.05C, 112.05D, or 112.05F, obesity that is 'severe,' as explained in question 6, satisfies the criteria in listing 12.05C for a physical impairment imposing an additional and significant work-related limitation of function and in listings 112.05D and 112.05F for a physical impairment

12

imposing an additional and significant limitation of function." SSR 02-1p. Although the Ruling does provide that a finding of a "severe" impairment at Step Two equates with a finding of an "additional and significant limitation of function" at Step Three, the Ruling does *not* provide the inverse, namely that a finding of "not severe" at Step Two equates with a finding of *no* "additional and significant limitation of function" at Step Three.

Also of concern is the limitation to light work in the FRC. To have imposed that limitation, the ALJ must have found Mr. Washington physically limited to some significant extent; however, the ALJ provided no explanation in his decision for the limitation to light work. The ALJ did not even identify what physical impairment or combination of impairments required the limitation to light work in his RFC analysis. There are at least two explanations for this inconsistency. One possibility is that the ALJ intended to find Mr. Washington's obesity not severe and to find that Mr. Washington did not meet Listing 12.05C but then erred by limiting Mr. Washington to light work in the RFC, hence the absence of analysis on the limitation of light work. Another possibility is that the ALJ found that Mr. Washington *did* have significant physical restrictions resulting from his obesity that led to a limitation to light work in the RFC but that the ALJ erred by not explaining why he limited Mr. Washington to light work yet did not find that Mr. Washington's obesity was severe for purposes of Step Two or constituted "an additional and significant limitation of function" at Step Three.

Notably, Question 6 of Social Security Ruling 02-1p, which the Court cited in footnote 1 of its January 12, 2012 Opinion and Order provides:

6. When Is Obesity a "Severe" Impairment [at Step Two]?

As with any other medical condition, we will find that obesity is a "severe" impairment when, alone or in combination with another medically determinable

13

> physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities. (For children applying for disability under title XVI, we will find that obesity is a "severe" impairment when it causes more than minimal functional limitations.) We will also consider the effects of any symptoms (such as pain or fatigue) that could limit functioning. (See SSR 85-28, "Titles II and XVI: Medical Impairments That Are Not Severe" and SSR 96-3p, "Titles II and XVI: Considering Allegations of Pain and Other Symptoms In Determining Whether a Medically Determinable Impairment Is Severe.") Therefore, we will find that an impairment(s) is "not severe" only if it is a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the individual's ability to do basic work activities (or, for a child applying under title XVI, if it causes no more than minimal functional limitations).
>
> There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002).

In the January 12, 2012 Opinion and Order, the Court discussed the evidence offered by Mr. Washington in support of his obesity as well as the ALJ's analysis of the record evidence on the issue. Having reconsidered this evidence of record in light of the legal standards, the Court now finds that the ALJ's failure to provide *any* explanation for limiting Mr. Washington to light work, given that the ALJ found Mr. Washington not to have any severe impairments at Step Two or a physical impairment that imposes an "additional and significant limitation of function" at Step Three, requires remand. This error is not harmless because there is more than one possible explanation for this inconsistency. Therefore, the Court grants Mr. Washington's motion as to the ALJ's Step Three determination as to Listing 12.05C.

### B. State Agency Physician

In his opening brief, Mr. Washington argued that the ALJ erred by not having a State agency or other program doctor evaluate the functional limitations from Mr. Washington's physical impairments. However, the Court did not address the issue. The Social Security Administration Regulations provide, in relevant part:

> What evidence do we consider when we determine if your impairment(s) medically equals a listing? When we determine if your impairment medically equals a listing, we consider all evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding. We do not consider your vocational factors of age, education, and work experience (see, for example, § 416.960(c)(1)). We also consider the opinion given by one or more medical or psychological consultants designated by the Commissioner. (See § 416.1016.)

20 C.F.R. § 416.926(c). Social Security Ruling 96-6p affirms the longstanding policy of the Social Security Administration regarding the consideration of findings of fact by State Agency medical and psychological consultants at the administrative level that "[a]n updated medical expert opinion must be obtained by the administrative law judge or the Appeals Council before a decision of disability based on medical equivalence can be made." SSR 96-6p, 1996 WL 374180, *1, 3 (July 2, 1996); *see also Barnett v. Barnhart*, 381 F.3d 664, 670-71 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue."). It may be that the ALJ did not consult an expert regarding medical equivalence for a physical impairment because the ALJ find that Mr. Washington did not have any severe physical impairments. Neither party addresses this issue of whether a medical expert opinion on a claimant's physical limitations for purposes of Listing 12.05C (mental retardation) is required for purposes of determining whether the physical impairment imposes an "additional and significant limitation of function." Because the Court is remanding this case for further proceedings, the Court directs the

ALJ to address this issue on remand and obtain any necessary additional expert medical opinions regarding medical equivalence.

## C. Concentration, Persistence, or Pace

In his original brief, Mr. Washington argued that the hypothetical question to the vocational expert and the ALJ's RFC assessment were unsupported because they did not include any limitations related to concentration, persistence, or pace. The Court disagreed, holding that the ALJ properly accounted for Mr. Washington's limitation in concentration, persistence, or pace in the RFC, which was in turn properly reflected in the hypotheticals posed to the vocational expert.

In the instant motion, Mr. Washington argues that the problem with the Court's ruling is that the ALJ's alleged failure to include limitations in concentration, persistence, or pace in the RFC was inconsistent with the ALJ's finding at Step Three that Mr. Washington had "moderate difficulties" in concentration, persistence, or pace. Mr. Washington further argues that the limitation in the RFC to simple, unskilled work without specific limitations related to concentration, persistence, or pace does not account for the finding of "moderate difficulties" in concentration, persistence, or pace. The Court disagrees with Mr. Washington's interpretation of the ALJ's decision.

In analyzing the criteria of Listing 12.05D at Step Three, the ALJ found:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. As discussed further below, the claimant has significant difficulties staying focused on tasks at school and in psychological evaluations. He received accommodations on standardized testing in school due to these limitations, and an Individualized Educational Plan was prepared to make necessary modifications to the claimant's curriculum, including special educational classes. Vocational records indicate that the claimant needed to increase his pace at work.

AR 26.

In the following paragraph, the ALJ noted as a procedural matter that the limitations identified in 12.05D for purposes of the listing analysis

> are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 06-8p.). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

AR 26. The ALJ then assigned Mr. Washington an RFC for light work limited to simple and repetitive work. AR 27.

In his mental RFC analysis, the ALJ summarized the evidence of record, including Dr. Neville's mental residual functional capacity evaluation of Mr. Washington. The ALJ noted that Dr. Neville found that Mr. Washington had moderate limitations in maintaining concentration, persistence, or pace as a result of his borderline intellectual functioning. The ALJ also noted that Dr. Neville further explained his opinions, finding "that the claimant retained sufficient capacity for necessary work-related interaction with peers and supervisors, and had the cognitive capacity to comprehend and carry out simple instructions." AR 29. After evaluating the evidence of Mr. Washington's mental impairment, the ALJ explained his RFC finding. As to the issue of concentration, persistence, or pace, the ALJ noted that Mr. Washington

> has a moderate limitation regarding pace but has shown that he can become more proficient at work activities over time. The claimant's school records indicate that he has consistently maintained a good attitude toward learning, and although he required special education services and accommodations in standardized testing, he earned his high school diploma through determination and hard work. It appears that the claimant has continued to apply this solid work ethic in the context of his employment, and as such remains capable of simple, repetitive work.

AR 30.

> The ALJ concluded with:
>
>> In summation, the residual functional capacity finding set forth herein is supported by the findings of consultative examiners and state agency medical examiner Dr. Neville. The claimant functions in the borderline intellectual range, and has moderate limitations in adaptation and maintaining sufficient pace. The evidence shows that he has overcome his limitations in adaptive functioning to a sufficient degree to perform simple work activities at McDonalds to the satisfaction of his supervisors, earning high marks for his job knowledge, quantity and quality of work, punctuality, and attendance. With adequate vocational support, the claimant has shown that he is capable of simple, repetitive light work.

*Id*.

In the January 12, 2012 Opinion and Order, the Court recognized that the Seventh Circuit Court of Appeals has held that moderate limitations in concentration, persistence, and pace are not adequately considered in an RFC that limits a claimant to simple, unskilled work. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010) ("In most cases . . . employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace."). Likewise, limiting a hypothetical to simple, routine, and unskilled work does not account for difficulties with concentration, persistence, and pace. *Id*. (citing *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008); *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004); *Kasarksy v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003)).

The Court also recognized that Social Security Ruling 85-15 provides that, "[b]ecause response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more

18

demanding job . . . ." SSR 85-15, at p. 6. "Any impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment." *Id.*

In that Opinion and Order, the Court found that "the ALJ discussed Mr. Washington's alleged limitations regarding the intensity, persistence, and limiting effects of his symptoms and found him not entirely credible, relying on the medical evidence of record to find that Mr. Washington's limitations in this area were the result of motivation rather than his disability. The ALJ explicitly discussed the weight of this evidence in formulating his RFC." The Court also noted that, in contrast to cited cases, the ALJ also explicitly found that Mr. Washington's allegations as well as the medical evidence support a limitation to simple and repetitive work, which the ALJ included in the RFC as well as the hypotheticals to the VE. *See* Jan. 12, 2012 Opinion and Order (*comparing Sullivan v. Astrue*, 825 F. Supp. 2d 928, 936-37 (N.D. Ill. 2011) (finding in the RFC analysis that the claimant had the ability to carry out simple tasks at a consistent pace despite a reduced ability to handle stress and pressure in the workplace), *with White v. Astrue*, 820 F. Supp. 2d 839, 848-49 (N.D. Ill. 2011) (remanding because the ALJ did not adequately explain how she accounted for limitations in concentration, persistence, and pace by limiting the claimant only to simple and repetitive tasks)).

Again, the Court finds that the ALJ's mental RFC analysis sufficiently described Mr. Washington's limitations resulting from his mental impairment and moderate limitation in pace. In this instance, the limitation to simple, repetitive work explicitly accounts for this moderate limitation in pace. In the instant motion, Mr. Washington does not contest any aspect of the above-cited portions of the ALJ's decision or the medical opinions relied on by the ALJ to make this finding. Therefore, the Court denies the motion on this issue.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Plaintiff's Motion to Alter or Amend Judgment Pursuant to F.R.C.P. 59(e) [DE 35].

For the reasons set forth in this Order, the Court hereby **GRANTS** the relief requested in Plaintiff's Memorandum in Support of his Motion to Reverse the Decision of the Commissioner of Social Security [DE 26] and **ORDERS** that this matter is **REMANDED** for further proceedings consistent with this Order.

The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Plaintiff and against Defendant.

SO ORDERED this 31st day of July, 2012.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record